IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
AT SOUTH BEND

DOROTHY MEYER, ET AL.                    CASE NO: 3:19-cv-755

    PLAINTIFFS                        JUDGE JON DeGUILIO
                                      MAGISTRATE JUDGE GOTSCH
    -VS-

NEWMAR CORPORATION, ET AL.               FIRST AMENDED COMPLAINT

    DEFENDANTS

---

## PRELIMINARY STATEMENT[1]

1. This case involves claims asserted under the Arizona and/or Indiana Uniform Commercial Code, the Magnuson Moss Warranty Act, and the Arizona Consumer Fraud Act and/or Indiana Deceptive Consumer Sales Act.

2. Jurisdiction exists with this court because a federal claim exists in which there is more than $50,000 in controversy under 15 USC 2301 et seq, invoking 28 USC 1331, and/or the amount in controversy is more than $75,000 and is between citizens of different states, invoking 28 USC 1332.

3. The vehicle which is the subject of this dispute was delivered to Plaintiffs in Arizona by Korges Enterprises, Inc., doing business and also known as Desert

---

[1] Pursuant to Fed. R. Civ. P. 15(a)(1)(A), a party may amend its pleading once as a matter of course within 21 days after service of a motion under Rule 12(b). Further, pursuant to Local Rule 7-1(d)(2), a party must file a response brief to a motion under Fed. R. Civ. Pro. 12(b) within 21 days after the motion is served unless that party is entitled to and first files an amended pleading as a matter of course under Fed. R. Civ. P. 15(a)(1). Here, pursuant to Fed. R. Civ. P. 15)(a)(1) and Local Rule 7-1(d)(2), Plaintiff's First Amended Complaint has only been amended to include paragraphs 6 through 10, which addresses and renders moot the issues raised in Defendant Korges Enterprises, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). (Doc. 25).

Autoplex RV, and was defective when delivered to Plaintiffs; ineffective repair attempts were made upon the subject vehicle by the authorized representative(s) of Newmar and/or Braun in California, Oregon, and Arizona; the subject RV is believed to have been manufactured in Indiana; the place where the relationship of the parties arose is Arizona because the warranty obligations of each defendant were received by Plaintiffs with the purchase of the subject RV in Arizona and any direct interaction with Plaintiffs occurred in Arizona.

## IDENTIFICATION OF PARTIES

4.    Plaintiffs are each a natural person domiciled and residing in Arizona and a consumer and buyer within the meaning of applicable laws.

5.    At all times relevant, Korges Enterprises, Inc. was a supplier and merchant and an authorized representative and agent of Newmar Corporation. Korges Enterprises, Inc. was authorized by Newmar Corporation to act for it in all respects related to warranty repair work performed or attempted on the subject vehicle. Plaintiffs acquired the subject RV from Korges Enterprises, Inc. As part of the sale of the subject vehicle to Plaintiffs, Korges extended to Plaintiffs an implied warranty of merchantability. In the course of repair and service attempts on the subject vehicle, Korges extended express and/or implied warranties.

6.    Korges Enterprises, Inc. routinely engages in business in the state of Indiana, and routinely solicits and contracts to purchase and purchases recreational vehicles and goods with various RV manufacturers in Indiana. Further, Korges Enterprises, Inc. entered into contracts or agreements with various RV manufacturers, including Newmar Corporation, in Indiana to become an

authorized dealership on behalf of said RV manufacturers. As part of the contracts or agreements with the various Indiana RV manufacturers, Korges Enterprises, Inc. agrees to buy from them and re-sell RVs, to purchase from them and sell RV parts and/or components, and to perform their warranty repair and service work as an authorized repair facility on behalf of the RV manufacturers. Further, Korges Enterprises, Inc. routinely directly communicates, via telephone, email and other electronic means, with various RV manufacturers in Indiana to arrange for and provide goods and services to consumers on behalf of RV manufacturers in Indiana. As a result, Korges Enterprises, Inc. purposefully and deliberately engages in significant activity within Indiana, and Korges Enterprises, Inc. maintains continuing obligations between itself and Indiana corporations, including Cargo Mate Trailers, Coachmen RV, Dynamax RV, Forest River RV, Heartland RV, Keystone RV, KZ RV, Newmar RV, Palomino RV, Riverstone RV, and more.

7.     Korges Enterprises, Inc. routinely does business and solicits and enters into contracts or agreements with various RV manufacturers in Indiana to purchase new RVs from RV manufacturers in Indiana for the purpose of retail resale. Korges Enterprises, Inc., as an authorized dealership for various RV manufacturers in Indiana, places orders for new RVs from the RV manufacturers in Indiana to be picked up or delivered to Korges Enterprises, Inc. for retail resale. As part of the industry standard practice, an RV manufacturer generally will not ship a new RV to a dealership for resale, including Korges Enterprises, Inc., without having entered into an agreement to be an authorized dealership

and without an order being placed by the dealership with the manufacturer.

8.   In addition to placing orders for the purchase of new RVs from various RV manufacturers in Indiana, Korges Enterprises, Inc. routinely does business and solicits and enters into contracts or agreements with various RV manufacturers in Indiana to perform warranty repairs and services on the RV's manufacturer's behalf. Also, Korges Enterprises, Inc. directly communicates, via telephone, email and other electronic means, with various RV manufacturers in Indiana for assistance in performing warranty work or other repairs on RVs built by the RV manufacturers. Korges Enterprises, Inc. directly communicates, via telephone, email and other electronic means, with various RV manufacturers in Indiana to obtain authorization from the various RV manufacturers before commencing warranty work on behalf of the RV manufacturers in Indiana. Further, Korges Enterprises, Inc. enters into contracts or agreements with various RV manufacturers in Indiana to order parts or other goods, via telephone, email and other electronic means, to be installed in RVs.

9.   Additionally, Korges Enterprises, Inc. entered into an agreement with Newmar Corporation to provide Newmar Corporation with a current inventory list of new Newmar RV's for sale by Korges Enterprises, Inc., and to allow Newmar Corporation to advertise Korges Enterprises, Inc.'s inventory of new Newmar RV's on Newmar Corporation's website on Korges Enterprises, Inc.'s behalf for the purpose of soliciting sales in and from Indiana, and Newmar Corporation does so from Indiana.

10.   Specifically, upon information and belief, approximately 77% of Korges

Enterprises, Inc.'s current new RV inventory was purchased from RV manufacturers located in Indiana as the result of commercial communications and activity by Korges Enterprises, Inc. in Indiana, which amounts to approximately $22,300,000.00 in benefits and revenue derived from business and contracts or agreements in Indiana with Indiana corporations. And, Plaintiffs' claims, as alleged herein, arise from Korges Enterprises, Inc.'s contacts and relationships with Indiana.

11.   Newmar Corporation is a merchant and corporation authorized to do business and doing business in Arizona and Indiana and whose principal place of business is in Indiana and who is incorporated in Indiana, and who is a warrantor of a recreational vehicle that Plaintiffs acquired and a supplier and a merchant. In the process of distributing the subject vehicle, Newmar provided to Korges an express warranty with instructions that it be extended to the retail purchaser of the subject vehicle, these Plaintiffs.

12.   To comply with its obligations under its warranties and contract of warranties, Newmar authorized, and/or ratified the acts and omissions of one or more of the following repair facilities: Desert Autoplex RV and/or Art's Mobile RV Service and/or Shawn Fuller's RV Service and/or Troy's Mobile RV Service and/or Horizon RV and/or Mike & Son's Truck Repair and/or Guaranty RV, Inc. to act as its authorized repair facility and representative and/or agent to perform repair and service attempts on the subject RV and its parts.

13.   The Braun Corporation, doing business and also known as Braunability, is a merchant and corporation authorized to do business and doing business as

BraunAbility under an assumed business name and as The Braun Corporation in Indiana and whose principal place of business is in Indiana and who is incorporated in Indiana, and who is a warrantor of the wheelchair lift and related components in the recreational vehicle that Plaintiffs acquired, and Braun is a supplier and a merchant.

14. The Braun Corporation is an original producer of completed components which are furnished to a second vehicle manufacturer, such as Newmar Corporation in this case, for installation by Newmar in a recreational or other vehicle prior to retail sale to a buyer, and a supplier who engaged in the business of making a consumer product, specifically the subject vehicle's wheelchair lift system and its respective related parts, directly or indirectly available to consumers like these Plaintiffs.

15. To comply with its obligations under its warranties and contract of warranties, The Braun Corporation authorized, and/or ratified the acts and omissions of Newmar and one or more of the following repair facilities: Desert Autoplex RV and/or Art's Mobile RV Service and/or Shawn Fuller's RV Service and/or Troy's Mobile RV Service and/or Horizon RV and/or Mike & Son's Truck Repair and/or Guaranty RV, Inc. to act as its authorized repair facility and representative and/or agent to perform repair and service attempts on the subject RV and its parts.

16. The vehicle at issue in this case was manufactured in Indiana as a complete vehicle for distribution by Newmar Corporation using the Braun wheelchair lift and its related parts.

## FIRST CLAIM: BREACH OF CONTRACT AND/OR WARRANTY

17.   This case involves a defective 2017 Newmar Canyon Star recreational vehicle and its defective wheelchair lift system and the several warranties, express and/or implied, that each defendant extended to Plaintiffs, but which one or more defendants were not able to comply with within a reasonable number of chances or a reasonable amount of time and whose warranties and/or contracts each defendant breached.

18.   The allegations of all other paragraphs and claims in this pleading are incorporated as if fully rewritten herein.

19.   This claim is for breach of express and/or implied warranty and/or contract of warranty by each defendant in Arizona and/or Indiana and/or elsewhere.

20.   Fueled by its aging population, the United States elderly and disabled assistive technologies market was growing rapidly in the late 1990's and early 2000's when the RV industry noticed its high expectations of a growing opportunity for the industry. In the pace of the last 20 years the market eclipsed predictions and now approaches $18 billion and is expected to hit $27 billion by 2024. RV manufacturers realized early and quickly in that time that they could adapt their recreational vehicles to make their RV's wheelchair accessible and open an entirely new market to both serve and profit from. They also realized that the freedom that an RV provides the mobile public was highly marketable to persons who were wheelchair bound by disabilities.

21.   The 2017 Newmar Canyon Star 3911 model was specifically built, marketed and sold for and to the disabled from its inception. With no apparent hesitation this

RV was advertised and promoted as being meticulously designed and engineered with guidance from wheelchair users themselves to give open-road access to all and equipped with ADA approved components to make seeing America easy for the disabled.

22.   But in the case of the Canyon Star unit involved in this case, the continuous failure of the power wheelchair lift system to operate properly raises serious and dangerous safety issues for any disabled occupant.

23.   Dennis & Dorothy Meyer made an instalment purchase of a 2017 Newmar Canyon Star with power wheelchair accessibility from Newmar's retail and service dealer, Desert Autoplex RV in Mesa, Arizona on August 25, 2016 and paid $84,250 down on the transaction.

24.   Under the terms of the motor vehicle retail instalment sale contract between Korges and Plaintiffs, the subject 2017 Newmar Canyon Star was the goods being sold and was a certain recreational vehicle believed to bear VIN # 1F 66F 5DY 8G0 A14294, and whose total cost exceeded  $200,000.

25.   Desert Autoplex RV sold the vehicle to Plaintiffs under a motor vehicle retail instalment sales contract which confirmed the down payment amount and required the balance of the purchase price and vehicle cost to be paid in monthly payments of $1,251.81 which began on October 9, 2016.

26.   In the course of construction of the subject RV, Braun provided the power wheelchair lift system to Newmar and Newmar installed it in this RV and Newmar then sold the RV wholesale to Desert Autoplex RV, who sold it to Plaintiffs after assuring them of the high quality and durability and reliability of

both Newmar and Braun products such as this RV.

27. Because of the defendants' joint and several representations and promises of high quality and years of durable and reliable use and travels of the RV and its power wheelchair lift system, Plaintiffs intended to keep the RV for many years, so they also bought from the Newmar dealer, at extra cost but as an integral part of the transaction, an optional six year service contract, paint protection, interior fabric protection, road guard protection and roadside assistance.

28. Newmar's website promised the public, and these Plaintiffs, that "nothing can stop you" but that did not happen here. It says that the power wheelchair lift has a backup system and more, but Newmar failed to tell Plaintiffs that it would not work right and never would get repaired. Newmar said that there is an extra wide path in the RV and there is wheelchair seating and more accessibility accommodations so Plaintiffs could get around and use more of the RV easily, but Newmar did not tell them that the non functioning power wheelchair lift system would mean that Plaintiffs would be trapped inside the RV. Newmar said this RV had everything Plaintiffs would need to travel from coast to coast but Newmar never told them that the RV would hold them captive when the only exit mechanism for a wheelchair stopped working properly. Newmar said that it believed that travel and adventures are things everyone should have the chance to enjoy, including those who use assistive devices for personal mobility, but what Plaintiffs experienced with Newmar and this Braun power wheelchair lift system is not the "adventure" Plaintiffs planned on having. Newmar said it had highly skilled employees but judging from this RV's defect list, that was not true.

Newmar promised Plaintiffs "excellence, front to back" with this RV and its power wheelchair lift system, but front to back is where all the defects were and excellence did not exist. Newmar promised craftsmanship, but what Plaintiffs got with this RV were manufacturing defects in workmanship and materials provided by Newmar and Braun that were scattered around the RV and a history of one frustrating problem after another. Newmar said the RV would be one of the most "stunning and durable" in the recreational vehicle industry, and durable it is not although it is stunning by the quantity and variety of defects, although this RV's stunning nature is not the kind of "stunning" Plaintiffs expected. Newmar promised "relentless quality" but the only thing that was relentless in this RV was the defects and failed power wheelchair lift system. Newmar said it would "stop at nothing" to deliver a motor coach "capable of exceeding the highest of expectations" but that is not what happened here with this RV. This RV is not the quality, reliability or durability or cost value that Plaintiffs were led to believe they would get from Newmar.

29.    The Braun website promised the public, and Plaintiffs, "expert design, engineered for the long-term durability and reliability" in a Braun product, but that is not what Plaintiffs got with this power wheelchair lift unit. Braun promised "easy service and repair" but no one has been able to do that. Braun said that "your motor coach power wheelchair lift system adds safe and reliable wheelchair accessibility," but Braun said nothing about, and thus concealed, the fact that the user would not be able to get out of the RV because the power wheelchair lift system would fail to work right. Braun said its power wheelchair lift system

would give them "freedom and mobility," but their "freedom" was more limited to the freedom to call for help again and again when the power wheelchair lift system failed again and again. Braun said it would provide "years of service" but that was inaccurate because it should have said that the Braun power wheelchair list system would actually require years of service repairs that would never actually make it fully function right and trouble-free. Braun promised "long term reliability and long term durability," but that is not what it delivered to Plaintiffs; what Plaintiffs got from this Braun power wheelchair lift system was more like long term repair work and no durability and constant unsafe operation for two years. Braun promised "personal, after-purchase customer service," but failed to disclose, and thereby concealed, that Braun's friendly voices that answered their pleas for help would fail to send competent technicians who were able to get the power wheelchair lift system fixed once and for all. Braun promised that its customer service team was "unrivaled at every level in every way." Well, that statement implied the highest level of competency and assistance but what Plaintiffs received was just the opposite - an unrivaled lowest level of competency. This power wheelchair lift system is not the quality, reliability or durability or cost value that Plaintiffs were led to believe they would get from Braun.

30.     Korges, dba Desert Autoplex RV, represented that Newmar and Braun made quality products that were durable and reliable and worth their cost, but that was misleading, inaccurate, false, and not true. Because Korges did not properly disclaim any implied warranties in its transactions with Plaintiffs, Korges gave an

implied warranty of merchantability on the entire RV, including the Braun power wheelchair lift system. Thus the entire RV was required to be reasonably fit for the ordinary purposes for which such products are manufactured and sold when Korges delivered it to Plaintiffs, but it was not. When a new RV spends months of time in the repair shop for repair attempts on defects then it is not merchantable. Korges' website promised the public, and Plaintiffs, that its service center would keep their RV "in the best condition possible," which implied the service facility at Korges was the best, but since this RV was plagued with defects which Korges could not or did not get fixed, this RV ended up being not in the best condition at all. Korges said its technicians were "certified," which implied a high level of competency and skill, and that their technicians would "keep the RV running like the day" Plaintiffs bought it, but instead defects started, ultimately never ended, and after taking possession of the RV, it never operated and ran right again.  In fact, Korges' technicians were not competent and highly skilled, as seen by the fact that they could not get all the defects fixed and failures like the power wheelchair lift system and the inoperative shades kept happening to the RV. Korges said its professional staff would give Plaintiffs "quick answers" to their questions but no one explained why the defects in this RV existed, arose, went away, came back, and still are not fixed after multiple repair attempts. The Korges sales agreement attempted to say it gave Plaintiffs no warranties at all on the RV but then Korges sold Plaintiffs its extended service contract as part of the deal; as a result of federal law Korges actually did give them an implied warranty covering the entire RV but giving one warranty while denying giving any was misleading,

inaccurate, false, untrue, and a suppression of a material fact. Korges even attempted to repair the power wheelchair lift system multiple times, along with other defects in the RV, but failed and defects remain unrepaired. Korges also gave Plaintiffs an implied warranty that the repairs that it did were done in a good and workmanlike service manner each time that Korges tried to repair defects in its shop, but Plaintiffs never got to a point where all the defects were fixed or stayed fixed, because if a repair facility attempts and fails at repairs, then the repairs are thereby not done in a good workmanlike service condition. Korges promised that customer service was its "top priority" but that is not what Plaintiffs experienced. Weeks at a time repair trips occurred with this RV and did not generate any "top priority" feeling with Plaintiffs at all. Korges promised that its service department was "state of the art" but it still could not get everything fixed once and for all with this RV. This RV and its power wheelchair lift system are not the quality, reliability or durability or cost value that Plaintiffs were led by Korges' sales employees to believe they would get from Korges.

31.     This RV and this power wheelchair lift system each contained defects that were covered by defendants' respective warranties, and each defendant was given a reasonable opportunity to perform the necessary repairs, and each defendant was unable to repair the defects within a reasonable time or after a reasonable number of attempts, and Plaintiffs have suffered damages as a direct and proximate result.

32.     The purpose of a warranty is to get defects fixed within a reasonable number of attempts. That purpose failed both with regard to this RV and this power

wheelchair lift system.

33. The purpose of a warranty is to get defects fixed within a reasonable amount of time. That purpose failed both with regard to this RV and this power wheelchair lift system.

34. Plaintiffs experienced repeated problems with various aspects of the RV including the portions which were warranted by Newmar and Braun.

35. An integral part of the purchase of the 2017 Newmar Canyon Star was the warranties and/or contract of warranty from Newmar Corporation.

36. Plaintiffs acquired the vehicle in reliance on the existence of a written warranty and/or contract of warranty from Newmar Corporation and on advertising representations from Newmar Corporation.

37. An integral part of the purchase of the 2017 Newmar Canyon Star was the power wheelchair lift system and its warranties and/or contract from The Braun Corporation. Plaintiffs acquired the vehicle in reliance on the existence of a written warranty and/or contract from The Braun Corporation and on advertising representations from The Braun Corporation.

38. An integral part of the purchase of the 2017 Newmar Canyon Star was the power wheelchair lift system and its warranties and/or contract of warranties from Braun. Plaintiffs acquired the vehicle in reliance on the existence of a written warranty and/or contract of warranty from Braun and on advertising representations from Braun and the dealer on behalf of Braun and Newmar on behalf of Braun.

39. Plaintiffs would not have purchased the subject RV without the power wheelchair

lift system that was part of the RV.

40.   Each and every defendant knew of the intended use of the subject RV and its wheelchair lift system by these Plaintiffs. Newmar marketed the subject RV with advertisements that included and promoted and highlighted the power wheelchair lift system, Braun designed, built and intended the power wheelchair lift system to be used by members of the public just like these Plaintiffs. At the time of sale and delivery by Korges, it also knew of the Plaintiffs intended use and needs for this RV and its subject power wheelchair lift system.

41.   Plaintiffs have been unable to use the vehicle in the expected, normal and customary manner because of the defects and malfunctions experienced with the 2017 Newmar Canyon Star because of the defects in the RV and/or its power wheelchair lift system, and Plaintiff's loss of confidence in the reliability and safety of the 2017 Newmar Canyon Star and/or its power wheelchair lift system and loss of confidence in the ability of each defendant, jointly and/or severally to live up to their respective warranties.

42.   The vehicle and/or its power wheelchair lift system has been in for warranty repair and service multiple times for a laundry list of  defects far exceeding what a reasonable person would expect if the vehicle or power wheelchair lift system had been manufactured right in the first place.  The vehicle has been out of service by reason of repairs to the RV and/or power wheelchair lift system an unreasonable number of days and a time far exceeding what a reasonable person would reasonably expect for the quality of which Defendants each represented their product would be. The service work was performed under warranties from each

Defendant.

43. The purpose of each defendant's respective warranty was to get those parts of the RV which each defendant warranted, and/or contracted to repair, fixed within a reasonable amount of time and within a reasonable number of attempts if a defect arose. A secondary purpose of each defendant's respective warranty was to give Plaintiffs confidence in the reliability and quality and safety of the parts of the RV that each defendant designed, assembled, and built. Another secondary purpose of each defendant's respective warranty was to give Plaintiffs confidence in each defendant as a company.

44. After acquiring the vehicle, Plaintiffs discovered that it did not conform to the representations of each Defendant inasmuch as it developed continuing malfunctions, defects and problems in those portions of the RV which each defendant was warranted and/or was responsible for and that was abusive and/or unfair and/or deceptive and/or unconscionable to Plaintiffs.

45. Defects in the vehicle which were caused or for which defendants are jointly and/or separately liable in whole or part by include, but are not limited to:

1. Jacks Don't Retract All the Way

2. Recall 16V-699 Wheelchair Access Door Opening

3. Recall 16V-744 Incorrect Wheelchair Lift Base Bolts

4. Headlights Not Adequately Bright

5. Wheelchair Assist Lift Loses Power

6. Wheelchair Lift Will Manual Lift Inoperative

7. Remote Handicap Door Opener Hydraulic Cylinder Broken

8.  Handicap Ramp Malfunction, Including Stopping in Mid-air

9.  Wheelchair Lift Hydraulic Arm End Piece Broke Off

10. Wheelchair Struts Replaced

11. Main "V" Inoperative

12. Outlets Inoperative

13. House Batteries Inoperative

14. Main Slide Will Not Retract

15. Generator Won't Stay On

16. Both Air Conditioning and Heating Units Inoperative, Replaced Twice

17. Mud Flap Scrapes Ground

18. Entertainment System Intermittently Works

19. Driver Side Seat Inoperative

20. Pilot and Co-Pilot Shades Inoperative

21. Fog Light Inoperative

22. Desk Window Hinges Bend

23. Kitchen Blackout Shade Inoperative

24. Dinette Shade Will Not Open,

25. Disc Player Child Lock Comes On

26. and more.

46. Because of the contract and/or warranty-covered defects, Plaintiffs notified each defendant and/or one of its authorized servicing dealers of the numerous defects that each defendant was responsible for and on various dates delivered the motor coach into the possession of each defendant and/or one of its authorized servicing

dealers at Plaintiffs' cost and/or expense.

47.    Here is a partial summary of some of the history of defects and nonconformities that Plaintiffs have experienced with this defective RV and its defective power wheelchair lift system:

| Sept 26, 2016 | Rocky Mountain Cummins | Generator stopped running on initial trip home from dealer |
|---|---|---|
| Jan 24, 2017 | Desert Autoplex RV | Installed wheelchair lift relay harness, a wheelchair door came open going around corner, main television and bedroom DVD player stopped working, passenger power window shade stopped working, two electrical outlets did not work, and while in the shop both the air conditioning - heat pump units failed |
| June 28, 2017 | Bullseye RV Repair - Mobile RV Service | Replaced both house batteries (after having Canyon Star for only nine months) |
| August 13, 2017 | Horizon Mobile RV Service, Bakersfield, CA | Main Slide out room would not come in, tech reset Slide out room controller while talking to Newmar |
| August 14, 2017 | Art's Mobile RV Service, Paso Robles, CA | Both front shades and all driver and passenger side shades stopped working, tech was able to get front shades working but not side shades |
| August 21, 2017 | Mike & Son's Mobile Truck Repair, Sacramento, CA | Replaced carburetor on generator which stopped working coming across the desert at beginning of trip, |

| | | |
|---|---|---|
| | | carburetor had crack in it and filled with fuel |
| September 22, 2017 | Guaranty RV Junction City, OR | Wheelchair lift kept losing power and not going up; at suggestion of Newmar, replaced mini switch on transmission (which turned out not to be a long term solution), both A/C heat pump units stopped working and had to be replaced for second time, bedroom TV and both DVD players stopped working, front driver power seat stopped working, two of four front driver and passenger power window shades were made operative, but two could not be fixed - spent two days camping in front of service bay – during waiting for these repairs Dorothy Meyer was confined for a period of 10 days inside of the RV due to the lift being unusable. |
| October 31, 2017 | Desert Autoplex RV | Wheelchair lift lost all power and did not come back on, replaced mini-switch on transmission again (which again turned out to not be a long term solution), fixed remaining two front driver & passenger power shades that stopped working |
| February 2018 | Desert Autoplex RV | James Scott, Newmar lead field tech - Wheelchair lift lost total power again while bringing RV home from previous |

| | | repair at Desert Autoplex RV, plus jacks would not go down, finally found "real" problem with lift losing all power - short in wires under the dash but this fix did not fix the continuing problem of the lift stopping in mid air when Mrs. Meyer is being raised in her wheelchair, found bad reversing contact for jacks |
|---|---|---|
| March 26, 2018 | Desert Autoplex RV | Bedroom slide out would not electrically come out at top, replaced Slide out room topper |
| May 24, 2018 | Shawn Fuller's Mobile RV Service Paso Robles, CA | Electric toilet would not stop running, tech replaced base assembly |
| July 8, 2018 | Troy's Mobile RV Service Mt. Shasta, CA | Fixed significant water leak in utility cabinet |
| July 16, 2018 | Troy's Mobile RV Service Mt. Shasta, CA | Main Slide out room would not come in, tech reset Slide out room controller using instructions which previously had been sent by Newmar |
| September 24, 2018 | Desert Autoplex RV | Replaced main TV which stopped working towards end of summer, fixed TV "televator" which came off track, replaced awning motor which was going out, replaced Slide out room controller with different model which had been sent by Newmar, fixed |

|  |  | another significant water leak in utility closet |
|---|---|---|
| February 2019 | Desert Autoplex RV | When picking up RV, wheelchair lift hydraulic arm end piece broke off and shot into RV, equipment subsequently replaced |
| March 2019 | Desert Autoplex RV | Replaced wheelchair lift hydraulic arm |
| April 2019 | Desert Autoplex RV | Replaced two power shades which had stopped working, replaced struts on wheelchair lift |
| May 2019 | Desert Autoplex RV | While replacing struts on wheelchair lift, found rear side micro switch was not working consistently, replaced micro switch on wheelchair lift |

48. Each time the RV was in each of defendant's warranty authorized repair shops for repair attempts, Plaintiffs subsequently found that more defects and problems still existed thereafter which were the responsibility of one or more defendants.

49. Plaintiffs complained to one or more defendants and asked Newmar's dealers and/or other entities for help with the RV and during most of these, Plaintiffs were in Arizona.

50. In addition to the above phone calls, a series of written emails occurred between the Plaintiffs and one or more parties, with Plaintiffs sending and receiving emails while in Arizona for most of them.

51. After being in the defendants' repair shops for multiple repair attempts and being out of service a total of about 223 days total and about 56 days for the power wheelchair lift system failures, and accumulating dozens of defects since its

acquisition, Plaintiffs notified all defendants that they wanted their money back but the defendants have not done that.

52.     Prior to filing this case, Plaintiffs provided written notice to all defendants about their respective abusive and/or unfair and/or deceptive and/or unconscionable acts, practices and failures to live up to their respective warranty and/or contract.

53.     Instead of performing as represented, no defendant repaired all its defects in the subject vehicle and its components once and for all time.

54.     As a result each defendant breached its express and/or implied warranties and/or contract and committed one or more abusive and/or unfair and/or deceptive and/or unconscionable acts and/or practices which are uncured.

55.     As a result, each defendant's warranty and/or contract failed of its essential purpose and any limitations contained within the warranty and/or contract are null and void and Plaintiffs are entitled to all applicable legal and equitable remedies in law.

56.     In addition, any limitations contained within the warranty and/or contract are null and void and without consideration and Plaintiffs are entitled to all applicable legal and equitable remedies in law.

57.     Through its advertising and otherwise, each Defendant represented that the recreational vehicles and/or components it built were fit for the respective purposes for which they were each designed, that they are safe and suitable vehicles for their intended designed use, and Plaintiffs acquired the vehicle with its power wheelchair lift system in reliance upon the belief that each defendant possessed a high degree of manufacturing skill and judgment and that each

defendant would honor and comply with its warranty obligations to Plaintiffs.

58.   Through their advertising and otherwise, each defendant represented that the recreational vehicles and components which it manufactured, installed and/or sold were of merchantable quality, fit and in proper condition for the ordinary use for which such vehicles and components are designed and used, and Plaintiffs relied on such, but the vehicle and components involved in this case were not, however, of merchantable quality and that was abusive and/or unfair and/or deceptive and/or unconscionable to Plaintiffs.

59.   The malfunctions and defects in the vehicle and its components severely and substantially impaired its use and/or safety and/or value to Plaintiffs and that was abusive and/or unfair and/or deceptive and/or unconscionable to Plaintiffs.

60.   Each defendant's failure to timely fix all of the defects for which they were each responsible has caused Plaintiffs to lose confidence in the reliability and safety of the subject motor vehicle and its components, and in the ability of each defendant to repair the defects they are responsible for, and that was abusive and/or unfair and/or deceptive and/or unconscionable to Plaintiffs.

61.   Plaintiffs provided each Defendant and/or one or more of each of their respective authorized dealers and/or representatives and/or employees with a reasonable number of opportunities to repair the vehicle and its components but they have each neglected, failed, refused or otherwise been unable to do so within a reasonable amount of time or a reasonable number of attempts

62.   As a result of the above facts, each Defendant breached its respective warranties and/or contract of warranty and/or representations with respect to the vehicle

and its components.

63. One or more of the defects and malfunctions in the vehicle and its components were covered under the terms of one or more of defendants' respective warranties and/or contracts, and each defendant failed to repair the vehicle and components which they were responsible for, thereby diminishing the use and/or safety and/or value of the vehicle and its components and that was abusive and/or unfair and/or deceptive and/or unconscionable to Plaintiffs.

64. Each defendant and/or one or more of its respective authorized dealers had notices of the breaches of their respective warranty and/or contract of warranty and the defective condition of the subject motor vehicle and its components within a reasonable time.

65. Plaintiffs suffered and shall continue to suffer actual, incidental and consequential damages as a direct and proximate result of the inability or other failure of each defendant and its respective authorized warranty repair representatives to repair or replace the vehicle and/or its components or refund its price and that was abusive and/or unfair and/or deceptive and/or unconscionable to Plaintiffs.

## SECOND CLAIM: FEDERAL WARRANTY ACT

66. The allegations of all other paragraphs and claims in this pleading are incorporated as if fully rewritten herein.

67. This claim is for breach of express and/or implied warranties and/or contract of warranties and/or the violation by Newmar Corporation and/or Braun of their obligations under the Magnuson-Moss Warranty Act, 15 U.S.C. 2301, et seq,

including but not limited to the obligations to comply with its warranties and/or contract and/or to make their respective warranty term disclosures and their respective actions in full compliance with all provisions of the Warranty Act and its applicable regulations, jointly and/or severally.

68.  As a result of the above, among other things, Newmar and/or Braun have each breached their respective obligations under the Warranty Act and/or its applicable disclosure and/or other regulations and that was abusive and/or unfair and/or deceptive and/or unconscionable to Plaintiffs.

69.  As a result of the allegations set for in the first claim and also above, among other things, Newmar and/or Braun each breached its express and/or implied warranties without legal excuse and that was unfair, and/or abusive, and/or deceptive and/or unconscionable to Plaintiffs.

70.  As a result of the above, inter alia, Newmar and Braun are each in violation of the Warranty Act.

### THIRD CLAIM: UDAP LAW(S)

71.  The allegations of all other paragraphs and claims in this pleading are incorporated as if fully rewritten herein.

72.  This claim is for violation of the applicable Udap laws, including the Arizona Consumer Fraud Act and/or Indiana Deceptive Consumer Sales Act (together referred to as the "UDP Laws"), by each defendant, jointly and/or severally.

73.  Newmar Corporation and Braun each knew when they were communicating with Plaintiffs that Plaintiffs lived in Arizona and that they were communicating with Plaintiffs inside Arizona and that the laws of Arizona governed its

communications and actions and omissions during such time.

74.     As a result of the above, among other things, one or more abusive and/or unfair and/or deceptive and/or unconscionable acts, omissions, or practices were committed by each and every defendant and remain uncured, or are uncurable, including but not limited to:

1.  Representing that the subject of a consumer transaction has performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have; for instance, the goods did not have the quality, durability, reliability and cost value that was promised

2.  Representing that the subject of a consumer transaction is of a particular standard or quality when it is not and the supplier knows or should reasonably know that it is not; for instance, your advertisements about this RV and its power wheelchair lift system were not accurate

3.  Representing that the supplier is able to deliver or complete the subject of the consumer transaction within a stated period of time when the supplier knows or should reasonable know the supplier could not; for instance, repairs were repeatedly not completed in a timely manner

4.  Failing to remedy defects within a reasonable number of attempts; for instance, you had multiple opportunities to get the defects fixed and failed to do so

5.  Failing to remedy defects within a reasonable amount of time; for

instance, you had more than a reasonable amount of time to get the defects fixed and failed to do so

6.      Failing to honor a request to take the vehicle back and/or rescind and/or cancel the sales and warranty transaction; for instance, my clients wanted their money back and still do

7.      Including one or more unconscionable and/or unreasonable terms in the written warranty document(s); for instance, given the failures to repair the defects and the failures of the essential purpose of your warranties in the first place (i.e., getting everything fixed within a reasonable amount of time and a reasonable number of attempts), the limitations and conditions the rest of your warranties tries to impose on my clients is both unreasonable and unconscionable

8.      Stalling and/or delaying the performance of a legal obligation; for instance, the repairs were delayed and not effected in a timely manner

9.      Representing that defects have been repaired when in fact they were not; for instance, returning the RV supposedly fixed but new problems occur and some old problems come back showed my clients that the implied and express representations that repairs had been done was actually not true

10.     Soliciting a person to enter into a contract or agreement that contains terms that are oppressively one sided or harsh and/or in which the terms unduly limit the person's remedies, and/or in which the price is unduly excessive, and there was unequal bargaining power that let the

person to enter into the contract or agreement unwillingly or without knowledge of the terms of the contract or agreement; for instance, your representations about the RV and the power wheelchair lift system induced my clients to buy this RV model with its Newmar-installed Braun power wheelchair lift system but the limitations and conditions in your agreements require my clients to pay for defective goods even when you don't get them repaired properly

11   Refusing to recognize the rights of buyers under the Uniform Commercial Code when the only remedy afforded by your warranties failed of its purpose; for instance, my clients wanted their money back and still do

12.   Knowingly distributing goods for retail sale to consumers that it knows or should know are defective without disclosing such; for instance, apparently Newmar and Newmar dealers expect their new recreational vehicles will have defects when they distribute them but no one and no sales literature warned my clients of that (Newmar may recall the related sworn testimony on this in other cases)

13.   Knowingly distributing goods for retail sale to consumers that it knows or should know are likely to be defective without disclosing such; for instance, apparently Newmar and Newmar dealers expect their new recreational vehicles will have defects when they distribute them but no one and no sales literature warned my clients of that

14.   Knowingly distributing goods for retail sale to consumers that it knows

or should know will become defective after receipt by the retail seller and before purchase by the retail buyer without disclosing such; for instance, apparently Newmar and Newmar dealers expect their new recreational vehicles will have defects when they distribute them but no one and no sales literature warned my clients of that

15. Knowingly distributing goods for retail sale to consumers that it knows or should know are likely to become defective after receipt by the retail seller and before purchase by the retail buyer without disclosing such; for instance, apparently Newmar and Newmar dealers expect their new recreational vehicles will have defects when they distribute them but no one and no sales literature warned my clients of that

16. Knowingly distributing goods for retail sale to consumers that it knows or should know will become defective during the first year after purchase by the retail buyer without disclosing such; for instance, apparently Newmar and Newmar dealers expect their new recreational vehicles will have defects when they distribute them but no one and no sales literature warned my clients of that

17. Knowingly distributing goods for retail sale to consumers that it knows or should know are likely to become defective during the first year after purchase by the retail buyer without disclosing such; for instance, apparently Newmar and Newmar dealers expect their new recreational vehicles will have defects when they distribute them but no one and no sales literature warned my clients of that

18.   Committing one or more acts, uses or employments of deception, deceptive or unfair acts, fraud, false pretense, false promise, misrepresentation, concealment, suppression and/or of omission in connection with the sale or advertisement of merchandise; for instance, as described above

75.   As a result of the above, inter alia, each defendant committed one or more abusive and/or unfair and/or deceptive and/or unconscionable acts, omissions, or practices in violation of the applicable state UDP law(s) in Arizona and/or Indiana, before, during or after a consumer transaction between Plaintiffs and a supplier in relation to the 2017 Newmar Canyon Star.

**WHEREFORE**, judgment is demanded against Defendants jointly and/or severally and as deemed proper and lawful by the Court and/or as follows:

**PRAYER FOR RELIEF**

1.  On the first claim, as against each defendant jointly and/or severally, damages, remedies, and relief as deemed proper and lawful by the Court, for each and every violation that may be proven at trial;

2. On the second claim, as against Newmar Corporation and Braun jointly and/or severally, damages, remedies, and relief as deemed proper and lawful by the Court, for each and every violation that may be proven at trial;

3.  On the third claim, as against each defendant jointly and/or severally, damages, remedies, and relief as deemed proper and lawful by the Court, for each and every violation that may be proven at trial;

Plus on each and every claim, expenses of suit and litigation, interest from the

date the contract was consummated, and an Order of rescission and reasonable attorney fees, plus all costs, and any and all other legal and equitable relief deemed necessary and just.

Plaintiffs demand trial by jury on all issues and all claims.

Respectfully submitted,

/s/ Ronald L. Burdge

www.RVLemonLaw.com

RONALD L. BURDGE
Attorney for Plaintiffs
8250 Washington Village Drive
Dayton, Ohio 45458-1850
Telephone:   937.432.9500
Facsimile:    937.432.9503
Email:         Ron@RVLemonLaw.com


Z:\data\Meyer, Dennis & Dorothy\Core Pleadings\1st Amended Complaint 112519 ss.wpd