UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| DOROTHY MEYER AND DENNIS MEYER, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 3:19-CV-755 JD |
| NEWMARY CORPORATION, THE BRAUN CORPORATION, AND KORGES ENTERPRISES D/B/A DESERT AUTOPLEX RV, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**OPINION AND ORDER**

Dorothy and Dennis Meyers purchased a brand new 2017 Newmar Canyon Star RV with a power wheelchair lift from Korges Enterprises, Inc. (d/b/a Desert Autoplex) in 2016 for approximately $200,000. [DE 1]. Desert Autoplex has contracts and agreements with several RV manufacturers in Indiana including the Newmar Corporation, which manufactured the Meyers' RV. The Braun Corporation produces wheelchair lift systems that are installed in RVs by other companies prior to sale. In this case, the Braun Corporation supplied the wheelchair lift system that was installed in the RV manufactured by the Newmar Corporation and eventually the RV was purchased by Desert Autoplex for resale in Arizona.[1] The RV at issue in this case was manufactured in Indiana and purchased by the Meyers in Arizona. The Meyers allege that they have been unable to use the RV in the expected, normal, and customary manner due to the RV's

---

[1] According to the complaint, the plaintiffs are domiciled in Arizona. Both the Newmar Corporation and the Braun Corporation are incorporated in Indiana and have their principal places of business in Indiana. Desert Autoplex RV is an Arizona corporation with its principal place of business in Arizona.

defects and malfunctions that have occurred since they purchased it. Attempted repairs of the RV under agreed upon warranties have been unsuccessful.

Desert Autoplex now moves to dismiss the case for lack of personal jurisdiction under Rule 12(b)(2) and improper venue under Rule 12(b)(3) due to a forum-selection clause found in the RV's Bill of Sale. [DE 44]. The plaintiffs' oppose the motion to dismiss, but alternatively move to transfer the case under 28 U.S.C. §§ 1404(a) or 1406(a) to the District Court of Arizona if the Court finds "that either it lacks personal jurisdiction or that the forum selection clause is enforceable . . . ." [DE 49 at 23]. For the reasons provided below, the Court denies the motion to dismiss but also finds that severance is necessary and transfer is proper as to some of the parties and claims to the District Court of Arizona.

## I.   STANDARD OF REVIEW

### A.  RULE 12(B)(2)

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a party may move to dismiss for lack of personal jurisdiction. Once a defendant moves to dismiss on that basis, "the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). To that end, the parties may submit, and a court may consider, materials outside of the pleadings. *Id.* In ruling on such a motion, a court must first determine whether the plaintiff has made out a *prima facie* case of personal jurisdiction. *Id.*; *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). At that stage, a court must "take as true all well-pleaded facts alleged in the complaint and resolve any factual disputes in the affidavits in favor of the plaintiff." *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010); *Purdue*, 338 F.3d at 782. If the plaintiff meets that initial burden but there are material factual disputes, the Court must then hold an evidentiary hearing, at which point the

2

plaintiff must prove any facts supporting jurisdiction by a preponderance of the evidence. *Hyatt*,

302 F.3d at 713.

### B.  RULE 12(B)(3)

Under Rule 12(b)(3), a party may move for dismissal of an action that is filed in an

improper venue. *See* Fed. R. Civ. P. 12(b)(3). When a defendant challenges the plaintiff's choice

of venue, the plaintiff bears the burden of establishing that it filed the case in the proper district.

*See Gilman Opco LLC v. Lanman Oil Co.*, 2014 WL 1284499, at *2 (N.D. Ill. 2014). Under Rule

12(b)(3), "the district court assumes the truth of the allegations in the plaintiff's complaint, *unless*

contradicted by the defendant's affidavits." *Deb v. SIRVA, Inc.*, 832 F.3d 800, 809 (7th Cir.

2016).

## II.     DISCUSSION

### A.  PERSONAL JURISDICTION OVER DESERT AUTOPLEX

Defendant Desert Autoplex first asserts that this Court lacks personal jurisdiction over it

and therefore must dismiss the suit under Rule 12(b)(2). The Court has personal jurisdiction over

a defendant to the same extent a state court in this forum could exercise personal jurisdiction

over that defendant. *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751

F.3d 796, 800 (7th Cir. 2014). Here, Indiana's long-arm statute permits its courts to exercise

personal jurisdiction to the full extent permitted under federal law. *Id.*; *LinkAmerica Corp. v.

Cox*, 857 N.E.2d 961, 967 (Ind. 2006) ("Indiana's long-arm provision now extends to the limits

of the Constitution."). Therefore, to determine whether it may exercise jurisdiction over

Autoplex, the Court must decide "whether 'the exercise of jurisdiction comports with the limits

imposed by federal due process.'" *Advanced Tactical Ordnance Sys., LLC v. Real Action

Paintball, Inc*., 751 F.3d 796, 800 (7th Cir. 2014) (quoting *Walden v. Fiore*, 571 U.S. 277, 283

(2014)).

As an initial matter, there is a high bar for asserting general jurisdiction over a defendant. *Kipp v. Ski Enter. Corp. of Wisconsin*, 783 F.3d 695, 698 (7th Cir. 2015). General jurisdiction is 'all-purpose' and exists "only when the [party's] affiliations with the State in which suit is brought are so constant and pervasive as to render it essentially at home in the forum State." *Daimler AG v. Bauman*, 134 S. Ct. 746, 751 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). A defendant is "essentially at home" in the forum state when a defendant corporation is incorporated and has its principal place of business within the state. *See Kipp*, 783 F.3d at 698. The general jurisdiction bar established by the Supreme Court rulings in *Goodyear* and *Daimler* is high and Desert Autoplex has not met it here. Desert Autoplex does business in the state of Indiana, but not enough to render it essentially "at home" there and its state of incorporation and principal place of business are in Arizona, therefore this Court cannot find that it has general jurisdiction over the defendant.

But the analysis under personal jurisdiction does not end there as the Court may also find that it has specific jurisdiction over a defendant. Specific jurisdiction refers to jurisdiction over a defendant in a suit "arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n. 8 (1984). "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Walden*, 571 U.S. at 283-84 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)). The "constitutional touchstone" for specific jurisdiction "remains whether the defendant purposefully established 'minimum contacts' in the forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). "Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this 'fair warning' requirement is satisfied if the defendant has

'purposefully directed' his activities at residents of the forum . . . ." *Id.* at 472. The defendant

must have "certain minimum contacts with [the state] such that the maintenance of the suit does

not offend traditional notions of fair play and substantial justice." *International Shoe Co. v.*

*Washington,* 326 U.S. 310, 316, (1945) (quotation omitted); *see also RAR v. Turner Diesel*, 107

F.3d 1272, 1277 (7th Cir. 1997).  Finally, the Seventh Circuit has stated that specific jurisdiction

is found where:

> (1) the defendant has purposefully directed his activities at the forum state or
> purposefully availed himself of the privilege of conducting business in that state;
> (2) the alleged injury arises out of the defendant's forum-related activities; and (3)
> the exercise of specific jurisdiction comports with traditional notions of fair play
> and substantial justice.

*See Felland v. Clifton,* 682 F.3d 665, 673 (7th Cir. 2012). Here, the Court finds there to be

sufficient minimum contacts between Desert Autoplex and Indiana to establish specific

jurisdiction.

The Court acknowledges that Autoplex does not have any dealerships located within

Indiana and that it does not have any members, employees, agents, or offices in the state either.

But the Court finds that Autoplex has sufficient minimum contacts through its business dealings

with several RV manufacturers, including the Newmar Corporation, which is located within the

state of Indiana. In fact, according to the second amended complaint, "approximately 77% of

Desert Autoplex's current new RV inventory was purchased from Indiana RV manufacturers,

which amounts to approximately $22,300,000.00 in benefits and revenue derived from business

contacts and activity in Indiana." [DE 42 at 4-5]. But what is more, Desert Autoplex entered into

a dealership agreement with the Newmar Corporation and signed the Dealership Sales and

Service Agreement in Nappanee, Indiana. [DE 49-3]. This clearly demonstrates purposeful

availment on the part of Autoplex. While signing a single contract in the state is insufficient to

confer personal jurisdiction on Autoplex, there are other points of contact that the Court may

consider when determining its relationship with Indiana. *Citadel Grp. Ltd. v. Washington Reg'l*

*Med. Ctr.*, 536 F.3d 757, 763 (7th Cir. 2008) ("At some point, a party's contacts must cross the

threshold from offending due process to sufficient minimum contacts."). Autoplex also

advertises its RV inventory on Newmar's website in Indiana, continues to perform warranty

repairs on behalf of RV manufacturers in Indiana, and continues to have dealership arrangements

with manufacturers located there. [DE 49]. In addition to the dealership agreement, the Court

must consider "prior negotiations and contemplated future consequences, along with the terms of

the contract and the parties' actual course of dealing—[which] must be evaluated in determining

whether the defendant purposefully established minimum contacts within the forum." *Burger*

*King Corp.*, 471 U.S. at 479.

As the plaintiffs allege, Autoplex routinely does business with RV manufacturers like the

Newmar Corporation in Indiana and the business includes regular and direct communication with

the manufacturers regarding dealership agreements and warranty work on behalf of the

manufacturers, like Newmar, in Indiana. Autoplex created and maintained continuing obligations

as an authorized dealership between itself and several RV manufacturers in Indiana in

performing warranty repairs on behalf of the manufacturers like Newmar. [DE 49 at 9-10]. In

fact, the Meyers took their RV to Desert Autoplex on nine occasions after purchase to obtain

warranty repairs, which Autoplex was able to provide due to its continuing relationship with RV

manufacturers in Indiana. *Id.* at 13. This created continuing obligations between Autoplex and

the RV manufacturers in Indiana as related to any warranty claims associated with a newly

purchased RV, which is sufficient to support this Court having personal jurisdiction over

Autoplex. *See Travelers Health Ass'n v. Com. of Va. ex rel. State Corp. Comm'n*, 339 U.S. 643,

6

648 (1950). The plaintiffs' alleged injury of breach of contract and warranty is directly related to

the RV manufacturing process in Indiana and Autoplex's continued warranty relationship with

the manufacturers located there.

Autoplex points to a recent decision from this district where a court found that it did not

have personal jurisdiction over an out-of-state RV dealer. *Jayco, Inc. v. Nat'l Indoor RV Centers

LLC*, 2017 WL 4270201, at \*5 (N.D. Ind. 2017). Autoplex argues that even if there is "generally

some type of relationship between a RV manufacturer and its dealer, even as it relates to claims

between those two parties, that is not sufficient" to establish personal jurisdiction. [DE 51 at 4].

But unlike the parties in *Jayco*, the dealership agreement between Autoplex and Newmar was

executed in Indiana, not Arizona. The claims at issue in *Jayco* were also related to trademark

infringement and unfair competition, not the claims of breach of warranty and violations of state

consumer deception acts that are before this Court. Moreover, Autoplex specifically agreed to

represent Newmar and its products to potential customers in addition to agreeing to perform

warranty repairs on RVs as a part of its continuing relationship and obligations to Newmar. [DE

49-3].[2]

As to the final element to consider when determining whether the Court has specific

jurisdiction over Autoplex, the Court finds that the exercise of specific jurisdiction here comports

with traditional notions of fair play and substantial justice. Here, "the foreseeability that is

critical to due process analysis . . . is that the defendant's conduct and connection with the forum

State are such that he should reasonably anticipate being haled into court there." *See World-Wide

Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980); *Burger King Corp. v. Rudzewicz*, 471

---

[2] The Court notes that the Dealership Sales and Service Agreement submitted to the Court as Plaintiff's Exhibit 3-A is missing page three. Despite this oversight, the remaining contractual provisions in the Agreement tend to show that Desert Autoplex agreed to perform warranty work on behalf of Newmar and Newmar agreed to pay Autoplex for such service in the future.

U.S. 462, 474 (1985). Autoplex's continued connections with the manufacturers of RVs in Indiana, including the Newmar Corporation, are not random, fortuitous, or attenuated such that Autoplex would not reasonably anticipate being haled into court there. *See World-Wide Volkswagen Corp.,* at 297. On the contrary, as adequately alleged by the Meyers, Autoplex has regular and systematic business dealings with Newmar Corporation and other RV manufacturers in the state. In fact, Autoplex agreed to future dealings with Newmar when it signed the Dealership Agreement and committed to making future warranty repairs for the manufacturer. Therefore, the Court finds that the plaintiffs have adequately alleged a *prima facie* case of personal jurisdiction as to Autoplex.

Because Desert Autoplex established a substantial and continuing relationship with RV manufacturers in Indiana including the Newmar Corporation and the issues at the heart of the plaintiffs' complaint are related to the warranty obligations of the defendants, the Court finds it has specific personal jurisdiction over it and its minimum contacts with Indiana are sufficient to bring suit here. Therefore, the defendant's motion to dismiss under Rule 12(b)(2) is denied.

## B.  IMPROPER VENUE AS TO THE NORTHERN DISTRICT OF INDIANA

Desert Autoplex also brings a motion to dismiss under Rule 12(b)(3) arguing that Indiana is not the proper forum for the Meyers' suit against it. All civil actions brought in federal district courts are governed by 28 U.S.C. § 1391. And "[w]hen venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b)." *Atlantic Marine Const. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 56 (2013). "Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws, and those provisions say nothing about

a forum-selection clause." *Id.* at 55. Thus, under federal law, the three categories of proper venue are:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

§ 1391(b). Here, the defendants do not all reside in Indiana, thus category one does not apply. The Court must take a closer look at category two recognizing that venue may be proper in more than one district. *See Armstrong v. LaSalle Bank Nat. Ass'n*, 552 F.3d 613, 617 (7th Cir. 2009).

As to category two, the Court notes that the RV at issue was manufactured in Indiana primarily by the Newmar Corporation and with parts from the Braun Corporation, both of whom reside and operate in the state. When considering whether the suit falls within § 1391(b)(2), the Court must look at the nature of the action to determine whether a substantial part of the event or omissions giving rise to the claim were located in this district. "[F]or events to be considered 'substantial' under the statute, it is sufficient for the plaintiff to establish that the events occurring in the forum district were part of the historical predicate for the instant suit." *Estate of Moore v. Dixon*, 460 F. Supp. 2d 931, 936 (E.D. Wis. 2006) (quotation omitted). The events "must have a 'close nexus' to the alleged claim." *Id.* (quoting *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 433 (2d Cir. 2005)). "The test is not whether a majority of the activities pertaining to the case were performed in a particular district, but whether a substantial portion of the activities giving rise to the claim occurred in the particular district." *TruServ Corp. v. Neff*, 6 F.Supp.2d 790, 792 (N.D. Ill. 1998).

Plaintiffs' claims for breach of warranty, breach of contract, and violation of the state

consumer deception acts arise out of their purchase of a new, but defective RV from Desert

Autoplex. The plaintiffs' arguments as to the defectiveness of the brand-new RV will be directly

related to the manufacturing of the RV and its parts, including the wheelchair lift, and the

warranties provided by the manufacturers, which include both the Newmar Corporation and the

Braun Corporation. *See Willis v. Caterpillar Inc*., 199 F.3d 902, 905 (7th Cir. 1999) (noting that

venue was likely proper where a forklift at issue was manufactured). Moreover, Desert Autoplex

signed a Dealership Sales and Service Agreement with Newmar in Nappanee, Indiana. [DE 49-

3]. The actions that occurred in the Northern District of Indiana are "significant to the genesis of

the dispute[]" and this "Court cannot say that the Northern District of Indiana has an

insubstantial connection to the case," therefore Desert Autoplex's motion to dismiss for improper

venue under Rule 12(b)(3) is denied. *See Family Express Corp. v. Square Donuts, Inc.*, 2016 WL

3855174, at *8 (N.D. Ind. July 14, 2016).

Notably, the Court is not saying that venue is improper in the District of Arizona. In fact,

since the RV was purchased in Arizona, the repairs occurred in Arizona, and the Meyers still

reside in Arizona with the RV, venue is proper the District of Arizona as well. But as the Court

noted earlier, when venue is proper in more than one court and there is a relevant forum-

selection clause, the Court must look to the clause and § 1404(a) to determine if transferring the

case to the other venue is appropriate or necessary.

## C.  TRANSFER ANALYSIS UNDER § 1404(a)

### I.  THE FORUM-SELECTION CLAUSE

In moving to dismiss for improper venue, Autoplex argues that a forum-selection clause

specifically designates Maricopa County, Arizona as the venue where any litigation arising from

its purchase must be brought. [DE 44 at 10]. The forum-selection clause is found in the RV Bill

of Sale and states: "Any litigation that arises from this transaction must be brought to Maricopa

County, Arizona." [DE 44-1].

First, the Court addresses the plaintiffs' arguments as to the forum-selection clause. The

Meyers argue that the Retail Installment Sales Contract ("Installment Contract") is the

controlling document instead of the RV Bill of Sale. [Plaintiffs Exhibit 1-B]. The Meyers also

argue that the forum-selection clause is ambiguous, inconspicuous, and will effectively deprive

them of their day in court. The Court does not find any of these arguments to be persuasive. The

Bill of Sale states, "This order is not binding until accepted by Seller and . . . a retail installment

sale of contract and purchase money security agreement (*Contract*) is executed." [DE 44-1].

Both the Bill of Sale and the Installment Contract were signed on August 25, 2016. The

documents do not conflict with each other as the Installment Contract does not contain a forum-

selection clause. *See Friedman v. World Transp., Inc.*, 636 F. Supp. 685, 691 (N.D. Ill. 1986)

("The other contracts do not provide for litigation exclusively in one forum, as the [Bill of Sale]

does."). Moreover, the Bill of Sale would appear to be the more central document in the dispute

since the Installment Contract relates more to the financing agreement between the Meyers and

Desert Autoplex instead of the purchase of the actual property at issue—the RV. *Id*.

Second, the forum-selection clause is clearly mandatory as it states that "[a]ny litigation

that arises from this transaction *must* be brought to Maricopa County, Arizona." (emphasis

added). The forum-selection clause itself is located in the middle of the Bill of Sale document

with a box surrounding it. It is the last sentence in the box and Mr. Meyer signed immediately

below it. The clause was not buried in the fine print and is conspicuously set aside within a

framed box in the Bill of Sale. *See Nw. Nat. Ins. Co. v. Donovan*, 916 F.2d 372, 377 (7th Cir.

1990). While the Meyers claim they were rushed for time and the sales representative did not

bring the clause to their attention, the Seventh Circuit has stated that "it is a fundamental

principle of contract law that a person who signs a contract is presumed to know its terms and

consents to be bound by them." *Paper Exp. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 757

(7th Cir. 1992). Thus, the Court finds that the forum-selection is neither ambiguous nor

inconspicuous. As to depriving the Meyers' of their day in court, the Court will address that

argument below.

## II.   THE *HOWMEDICA* FRAMEWORK

Having decided that the forum-selection clause is valid and properly invoked here, the

Court must now decide whether to enforce it and transfer this case. Pursuant to § 1404(a), a

federal district court may transfer any civil action to any other district for the convenience of the

parties and witnesses and in the name of justice, if venue is proper in both courts. Usually, the

transfer analysis involves balancing both private and public interests, but when there is a valid

forum-selection clause the transfer calculus changes as to the most proper forum for resolution of

the dispute. *Atlantic Marine*, 571 U.S. at 63. The Supreme Court has stated that "a valid forum-

selection clause should be given controlling weight in all but the most exceptional cases."

*Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring).

But here, the analysis is more complex as only one of the defendants in the case signed

the Bill of Sale, which contains the valid forum-selection clause. Only the Meyers and Desert

Autoplex signed the Bill of Sale, therefore the forum-selection clause does not apply to the other

defendants—Newmar and the Braun Corporation. The Seventh Circuit has not addressed "how

forum-selection clauses affect the § 1404(a) transfer analysis where both contracting and non-

contracting parties are found in the same case and where the non-contracting parties' private

interests run headlong into the presumption of *Atlantic Marine*—hence, the problem we confront today." *In re: Howmedica Osteonics Corp*, 867 F.3d 390, 403 (3d Cir. 2017). In order to address this tricky issue, the Third Circuit created a framework for determining when a case should be transferred or severed as a result of a forum-selection clause. At least one other court in this district has looked to this framework for guidance and therefore this Court will as well. *See Simpson v. Thor Motor Coach*, 2019 WL 2206092, at \*4 (N.D. Ind. May 22, 2019).

The *Howmedica* framework established by the Third Circuit involves four steps. At the first step, the court faced with a valid forum-selection clause assumes that it applies to the parties who agreed to it and that "pursuant to *Atlantic Marine*, the private factors of the parties who have signed a forum agreement must, as matter of law, cut in favor of severance and transfer to the contracted for forum." *In re Rolls Royce Corp.,* 775 F.3d 671, 681 (5th Cir. 2014). At step two, the court should consider the private and public interests of the parties who did *not* sign the forum-selection agreement. The court must "perform[] an independent analysis of private and public interests relevant to non-contracting parties, just as when adjudicating a § 1404(a) transfer motion involving those parties in the absence of any forum-selection clauses." *Howmedica,* at 404 (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir. 1995)). At step three, the court must consider severance if any procedural or jurisdictional defects require it. "If only one severance and transfer outcome satisfies the constraints identified at this step, then the court adopts that outcome and the transfer inquiry ends." *Howmedica,* at 404. At step four, the Court exercises its discretion in determining the most appropriate course of action and weighing the public and private interests while also considering efficiencies related with avoiding duplicative litigation. *Id*., at 405. "Depending upon the outcome of the *Howmedica* analysis, [the Court]

13

could decide to retain the case in its entirety, transfer the case in its entirety, or sever certain

parties or claims in favor of another forum." *Simpson*, 2019 WL 2206092, at *3.

### 1.  Step One: Forum-Selection Clauses

At the outset, as the Court explained above, the forum-selection clause is valid and

enforceable against the relevant contracting parties—the Meyers and Desert Autoplex. Thus, the

Meyers' claims against Desert Autoplex should be litigated in the District of Arizona in

Maricopa, County. The forum-selection clause does not apply to the non-contracting parties, the

Newmar Corporation and the Braun Corporation. Therefore, the Court moves to step two to

analyze the private and public interests relevant to the non-contracting parties.

### 2.  Step Two: Private and Public Interests

In order to mimic the transfer analysis under 1404(a), "courts at Step Two should

consider the private and public interests of the parties who have *not* signed a forum-selection

agreement." <u>Howmedica</u>, at 404 (citing *Rolls Royce*, 775 F.3d at 681). Here, the Court's focus is

on the interests of the Newmar Corporation and the Braun Corporation.

### a.  Private Interests

The Court's evaluation of the two defendants' private interests parallels the analysis

under § 1404(a) and includes a case-by-case consideration of convenience and fairness. *See*

*Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.,* 626 F.3d 973, 977 (7th Cir. 2010).

In evaluating the convenience element, courts generally consider: "(1) the plaintiff's choice of

forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the

convenience of the witnesses; and (5) the convenience of the parties." *Schumacher v. Principal*

*Life Ins. Co.*, 665 F. Supp. 2d 970, 977 (N.D. Ind. 2009).

Generally, a plaintiff's choice of forum is given substantial deference and, in this case, happens to be extremely convenient for both Newmar and the Braun Corporation. *In re Nat'l Presto Indus., Inc.,* 347 F.3d 662, 663–64 (7th Cir.2003) ("unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed"). But, "[t]hat deference is lessened, however, where the plaintiff's chosen forum is not the plaintiff's home forum or has relatively weak connections with the operative facts giving rise to the litigation." *Body Sci. LLC v. Bos. Sci. Corp.*, 846 F. Supp. 2d 980, 992 (N.D. Ill. 2012). Here, the Meyers are domiciled in Arizona where they purchased the RV at issue and many of the attempted repairs under warranty occurred in Arizona and other states out west. But, as the Meyers argue, their claims involve operative facts related to the manufacturing of the RV in Indiana. The RV at issue was allegedly designed, assembled, manufactured, and distributed in Indiana, but likely is currently located in Arizona with the Meyers. As to access to sources of proof and witness convenience, many of the witnesses from both Newmar and the Braun Corporation are likely domiciled in Indiana where the manufacturing plants are located. The convenience of the parties is evenly split in this suit – Newmar and the Braun Corporation are located in Indiana, while the Meyers and Desert Autoplex are located in Arizona. If focusing solely on Newmar and the Braun Corporation, the private interest factors tend to show that this Court would be a more convenient forum to defend this suit.

### b.  Public Interests

Where the private interest factors focus on the non-contracting defendants, the public interest factors focus on the efficient administration of the courts. When considering public interests, courts should consider: (1) the speediness of trial in either jurisdiction; (2) each court's familiarity with the relevant law; (3) the desirability of resolving controversies in each locale,

and (4) each location's relationship to the controversy. *See Research Automation*, 626 F.3d at

978.

 The Federal Judicial Caseload Statistics tend to indicate that the District Court of Arizona

has a significantly higher civil case load than the Northern District of Indiana.[3] But the data also

indicates that the median time to trial is 12.2 months for this district and 12.5 months for the

district in Arizona. Thus, that data tends to only slightly favor Indiana since there is a higher

chance of a speedier trial in this jurisdiction. As to each court's familiarity with the relevant law,

the claims are under federal law and under either Arizona or Indiana's UDAP laws, which would

present a similar challenge in application to both jurisdictions and thus this factor is neutral as to

either jurisdiction. Finally, Indiana has an interest in this controversy as both Newmar and the

Braun Corporation are incorporated here and regularly do business here. The RV was purchased

in Arizona and the agreements related to the RV were signed in Arizona, but the defects alleged

by the Meyers are more directly connected to the manufacturing of the RV then the sale of the

RV. At the very least, the claims centered on the manufacturing of the RV, the wheelchair lift,

and their associated warranties are centered in Indiana.

 Considering both the private interests of the Newmar and Braun corporations in addition

to the public interest factors of the two jurisdictions at issue, the Court finds that the private

interests clearly favor keeping the case in Indiana but the public interests were more neutral as to

jurisdiction. Related to the non-contracting parties of the forum-selection clause, Newmar and

Braun, the scale tips more in favor of keeping the suit in Indiana. Since this results in a "conflict

with the Step One presumption that [the Meyers'] claims against the remaining defendants

---

[3] U.S. District Courts—Civil Cases Filed, Terminated, and Pending, by Jurisdiction—During the 12-Month Period Ending March 31, 2019. Available at: https://www.uscourts.gov/statistics/table/c-1/federal-judicial-caseload-statistics/2019/03/31 and https://www.uscourts.gov/statistics/table/c-5/federal-judicial-caseload-statistics/2020/03/31.

should proceed in [Arizona], we next assess whether severance is warranted." *Howmedica*, at

408.

### 3.   Step Three: Considering Severance

Severance is a necessary consideration at this step since the analysis thus far has not

pointed to the same court. At this step it is necessary to consider defects in jurisdiction, venue, or

joinder which may direct the analysis towards a particular venue. *Howmedica*, at 408. In their

response brief, the Meyers allege a jurisdictional defect associated with transferring the entire

suit to Arizona. They claim that the District Court of Arizona lacks personal jurisdiction over the

Braun Corporation, which would prevent transfer of the whole suit to Arizona. Nothing in the

record indicates that a court in Arizona would have jurisdiction over the Braun Corporation as it

was incorporated and has its principal place of business in Indiana. Moreover, it sold its power

wheelchair lift to the Newmar Corporation in Indiana and the lift was installed in the RV in

Indiana. There is also no evidence in the record demonstrating a direct connection between the

Braun Corporation and Desert Autoplex or that the Braun Corporation created continuing

obligations with or significant activities in Arizona. Thus, it is likely that the Meyers are right in

claiming that the District Court of Arizona may not assert personal jurisdiction over the Braun

Corporation.

Arizona's lack of personal jurisdiction over the Braun Corporation is a defect that

prevents this Court from transferring the case with all the defendants there. While the forum-

selection clause clearly directs this Court to transfer the Meyers' suit against Desert Autoplex to

Arizona, the *Howmedica* framework analysis has indicated that both the private and public

interest factors weigh in favor of keeping the suit against the Newmar Corporation and the Braun

Corporation in Indiana. "The Step Three analysis, in sum, indicates that [the Meyers'] claims

17

against [Desert Autoplex] may be severed and, indeed, that dismissal or transfer of those claims to another forum is mandatory." *Howmedica*, at 409. And since there is only one outcome that satisfies the constraints identified in this framework, the Court does not need to proceed to Step Four.

Severance and transfer of only the claims against Desert Autoplex satisfies *Atlantic Marine's* prescription that forum-selection clauses should be enforced "[i]n all but the most unusual cases," it accounts for the private and public interests relevant to Newmar and the Braun Corporation, resolves the personal jurisdiction defect as to the Braun Corporation, and promotes efficient resolution of the Meyers' claims without unduly prejudicing the non-contracting parties' private interests. *See Howmedica*, at 411. Finally, as to the Meyers' argument that transferring it to Maricopa County will deprive them of their day in court, the Court finds that is also not the case. The Meyers purchased the RV in Mesa, Arizona, which is located in Maricopa County where the United States District Court of Phoenix is located. And according to the Civil Cover Sheet filed in this case, the Meyers also reside, assumingly along with the RV at issue, in Maricopa County or did at the time of filing this suit. [DE 1]. While recognizing that litigating two suits in different states at the same time is certainly inconvenient, the Meyers will not be precluded from having their day in court.

## CONCLUSION

For the reasons set forth above, the Court DENIES Desert Autoplex's motion to dismiss, but pursuant to the forum-selection clause found in the RV Bill of Sale, finds that severance of the Plaintiffs' claims against Autoplex is appropriate, so the Court grants the motion in that respect. [DE 43]. Under 28 U.S.C. 1404(a), the Clerk of the Court is directed to sever the claims of the Plaintiffs against Desert Autoplex and to transfer it to the District of Arizona in Phoenix.

This Court will retain jurisdiction over the Plaintiffs' suit against the Newmar Corporation and

the Braun Corporation.

       SO ORDERED.

       ENTERED:  June 16, 2020

                  /s/ JON E. DEGUILIO
                  Chief Judge
                  United States District Court